IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROBERT SAYRES                                                    PLAINTIFF

v.                         CASE NO.: 5:10-cv-5139

TIM HELDER                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Robert Sayers filed this civil rights action on July 23, 2010. (Doc. 1). He proceeds pro se and *in forma pauperis*. The complaint was provisionally filed prior to a determination regarding Plaintiff's status as a pauper and service of process. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Jimm Larry Hendren, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

### I.   Background

Plaintiff names as the defendant in this action Tim Helder, Sheriff of Washington County, Arkansas. Plaintiff alleges what he titles as "Claim #1," a claim that trustees of the Washington County Detention Center are housed in a barracks which allows the trustees to view female inmates as they undress and shower through a window across the control center. (Doc. 1, ¶ V). Male trustees can also be viewed by the females in the same manner. (Id.) Plaintiff did not indicate in his original Complaint if he is one of the male trustees.

-1-

In what Plaintiff has titled as "Claim #2," Plaintiff states he is under doctor's orders at the jail to have no heavy lifting due to a hernia. (Id.) Plaintiff states he needs a court order to "make the sheriff ship me because the doctor here at the jail said the county will not pay for my surgery." (Id.)

On July 23, 2010, this Court entered an Order (Doc. 2), directing Plaintiff to file an Amended Complaint which specifically set forth his allegations, as Plaintiff had originally filed his Complaint with a co-Plaintiff, and it was impossible to determine which claims were being asserted by which Plaintiff. (Id.) Additionally, Plaintiff had not returned a completed application to proceed *in forma pauperis*, and was also directed to return a completed form. (Id.)

Plaintiff did not return a completed *in forma pauperis* application, but moved that the Court direct Washington County to fill out such paperwork as they had refused his efforts to complete the inmate account portion of that document. (Doc. 3). It is therefore clear that Plaintiff is seeking to proceed *in forma pauperis* in this action.

Plaintiff also filed an Amended Complaint. (Doc. 5). In this Complaint, Plaintiff names Sheriff Helder and also the kitchen supervisor "Scott" as Defendants. (Id., ¶ V). Plaintiff alleges Scott forced him to do heavy lifting as a trustee in the kitchen while Plaintiff was under orders not to do any heavy lifting due to

-2-

his hernia which is due for surgery.  (Id.)  Plaintiff also alleges the hernia was caused while working at the detention center but the county will not pay for the cost of the procedure.  (Id.) Plaintiff also indicates Scott lied to other inmates about Plaintiff's condition, but three weeks after his complaints Officer Hill removed Plaintiff from kitchen duty.  (Id.)  Plaintiff further states he informed Officer Guthary of his condition, but the officer would not look at his medical file.  (Doc. 5, ¶ V). Plaintiff indicates he was on light duty in laundry, but was pulled from this work to help unload trucks for the kitchen, which increased his hernia and pain from it.  (Id.)  Plaintiff was then placed back on laundry detail.  (Id.)

Plaintiff further states similar allegations as to those made in the original complaint (Doc. 1) regarding being seen by female inmates while in the shower, although he makes it clear he was one of the inmate trustees who was able to see and be seen.  (Doc. 5, ¶ V).  Plaintiff indicates "the girls keep writing us from 'y' block saying they can see us."  (Id.)

Plaintiff was asked to provide answers to certain questions propounded to the Court in an Addendum.  (Doc. 9).  Plaintiff filed the Addendum which provided the following information.  (Doc. 10).  Plaintiff states he received letters from Y-block female inmates on July 15 and August 6, 2010, from Trisha Adams and Patricia Jones, informing him that those females could view Plaintiff while he was in the shower.  (Id.)  Plaintiff states he

-3-

was not threatened in any of the letters, but indicates some threatening remarks were made by the male inmates who enjoyed watching the female inmates in the shower.[1]   (Id.)   An inmate threatened Plaintiff that if the females were moved as to be unable to be viewed by the male inmates he would stab Plaintiff in the eye when Plaintiff slept. (Id.)   Separately, an inmate threatened to start a fight with Plaintiff, and another inmate threatened to kick Plaintiff in his hernia.  (Id.)   These threats occurred on July 15, July 28, and August 2, 2010.  (Id.)

Plaintiff also stated the hernia occurred on or around June 15, and that a few weeks passed before he sought to see the doctor regarding the injury.  (Doc.  10).  Apparently, Plaintiff was diagnosed with the hernia at that time, some point in late June.

However, Plaintiff was told that without surgery, he would have to "watch what [he] was l[i]fting" or the hernia "could and would come all the way out." (Id.)  Plaintiff was also told by his doctor that some people "go years" without having surgery.  (Id.)  Plaintiff was told not to lift over twenty-five pounds or to perform over-head lifting.  (Id.)

Around the time the hernia occurred, July 15th or 20th, Plaintiff became a trustee and was assigned to laundry duty.  (Id.)  On or about July 5, he was assigned to kitchen duty and remained

---

[1]  Plaintiff also indicates there was a shower curtain provided for the female inmates.  Plaintiff does not indicate if the shower curtain was not fully functional or if the female inmates simply would not close the curtain. (Doc.  10, ¶ 13.)

-4-

there for three weeks.  (Doc. 10).  Plaintiff states he complained of the kitchen duty exceeding doctor's orders for three weeks before he was sent back to laundry duty.  (Id.)

Regarding his retaliation allegations, Plaintiff stated he was "fired" as a trustee and locked down for looking at the female inmates in the shower.  (Id.)  Plaintiff also indicates he asked to be locked down, for protective reasons.  (Id.)

Plaintiff has also filed a Motion to Amend his Complaint (Doc. 12) and name Leroy Brown Lee, chairman of the Arkansas Parole Board, as a Defendant.  Plaintiff states the "parole board once more sent me to prison without a due-process hearing" on March 15, 2010.  (Id.)  Plaintiff further states he had witnesses present and on-time for the hearing.  (Id.)

## II.  Applicable Law

Title 28, Section 1915 of the United States Code governs proceedings filed *in forma pauperis*.  As part of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, signed into law on April 26, 1996, section 1915 was amended in an effort to address concerns about, and reduce the number of, frivolous prisoner initiated lawsuits.  28 U.S.C. § 1915.  Prior to the PLRA's amendments to Section 1915, a prisoner who attained *in forma pauperis* status was exempted from paying court fees.  After the enactment of the PLRA, prisoners granted IFP status are required to pay the filing fee but are allowed to pay it in

installments.  28 U.S.C. § 1915 (b).

The PLRA also added subsection 1915 (g) which limits the
ability of a prisoner, who has filed at least three claims that
have been dismissed as frivolous, malicious, or for failure to
state a claim, to obtain IFP status.  Specifically, § 1915 (g)
provides that:

> In no event shall a prisoner bring a civil action . . .
> under this section if the prisoner has, on three or more
> prior occasions, while incarcerated or detained in any
> facility, brought an action . . . in a court of the
> United States that was dismissed on the grounds that it
> is frivolous, malicious, or fails to state a claim upon
> which relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury.

28 U.S.C. § 1915 (g).  This provision has commonly become known as
the "three strikes rule" or the "three strikes provision" and has
withstood constitutional challenges.  See e.g., Higgins v.
Carpenter, 258 F.3d 797, 800 (8th Cir. 2002).

## III.    Discussion

The three strikes rule applies to Plaintiff.  He has had three
previous actions that qualify as strikes against him under Section
1915 (g).  See e.g., Sayres v. Pearson, Civil No. 05-3049 (W.D. AR–
dismissed as frivolous on 12/1/2005); Sayres v. First Arkansas
Bailbonds, et al., Civil No. 4:06-00407 (E.D. AR–dismissed as
frivolous on 4/10/2006); Sayres v. Hutson, et al., Civil No. 05-
3063 (W.D. AR– dismissed as frivolous on 5/19/2006). In addition,
Sayres has had at least two cases dismissed by virtue of the three
strikes rule. Sayres v. Hickman, et al., Civil No. 06-3043 (case

-6-

dismissed 9/07/2006); Sayres v. Arkansas, et al., Civil No. 10-3032 (case dismissed 7/14/2010).

However, Plaintiff may still be allowed to proceed *in forma pauperis* if he falls under the "imminent danger" exception to the three strikes rule that is set forth in § 1915(g). *See* 28 U.S.C. § 1915(g) (providing that three strikers should, nevertheless, be granted permission to proceed *in forma pauperis* if they are "under imminent danger of serious physical injury").

Allegations of past danger are insufficient; the harm must be occurring when the Complaint is filed. See id. at 717. The "threat or prison condition [must be] real and proximate." Lewis v. Sullivan, 279 F.3d 526, 529 (7th Cir. 2002). The Eighth Circuit also has been reluctant to apply the imminent danger exception unless the alleged ongoing danger exposes the prisoner to a risk of a truly serious physical injury. Compare Ashley, 147 F.3d at 717 (applying the imminent danger exception when a prisoner alleged that prison officials continued to place him near his enemies despite two prior stabbing incidents), with Martin v. Shelton, 319 F.3d 1048,1050 (8th Cir. 2003) (refusing to apply the imminent danger exception when a plaintiff alleged that prison officials made him work outside in extreme weather conditions that did not result in any serious physical injuries).

Although Congress also did not define "serious physical injury," various courts have interpreted the meaning of the phrase.

-7-

In Ibrahim v. District of Columbia, 464 F.3d 3, 7 (D.C. Cir. 2006), the D.C. Circuit concluded that a "chronic disease that could result in serious harm or even death constitutes 'serious physical injury.'" Id. Similarly, in Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004), the Eleventh Circuit found that HIV and Hepatitis C, both chronic and potentially fatal diseases, met the "serious physical injury" requirement. Moreover, in Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003), the Seventh Circuit recognized that "heart palpitations, chest pains, labored breathing, choking sensations, and paralysis in ... legs and back" resulting from a denial of medication were serious physical injuries. Id. The Eighth Circuit also has addressed the question, concluding that two impending dental extractions coupled with a spreading infection in the mouth that resulted from a lack of proper dental treatment amounted to a serious physical injury. McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002).

There are no facts alleged that indicate Sayres is under imminent danger of physical injury. Cf. Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir. 1998) (finding allegations of ongoing danger sufficient where prisoner specified two incidents where he had suffered harm and allegations were supported by documentary evidence). Regarding his hernia, Plaintiff has alleged he had a hernia which required surgery, but surgery was refused by the jail doctor. Plaintiff indicated his condition worsened due to medical

orders being disregarded and heavy lifting becoming required of him.  However, Plaintiff also stated the doctor told him people could go years without having the surgery and he was removed from the heavy lifting duties at the time of his Complaint.  Thus, Plaintiff was in no risk of harm by not having the surgery, and there is no indication Plaintiff could be put back on heavy-lifting duties as he is no longer a trustee, therefore there is no risk of continuing harm from the heavy-lifting. Pennington v. Smiley, 2009 WL 2241330 (E.D. Ark.  2009) (allegations of pain in left knee which required surgery and inadequate care by physicians do not describe imminent danger of physical injury); see also Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3rd Cir.  2001) (holding that the exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct and that "[b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred.").  In this case, Plaintiff has indicated no impeding harm of serious physical injury due to his hernia.

Plaintiff's claims regarding seeing and being seen by inmates of the opposite sex while nude also do not show any imminent danger of physical injury.  While Plaintiff stated some of the female inmates would tell the male inmates the males had been viewed while

nude, Plaintiff clearly states he was not threatened by those inmates. Plaintiff does indicate he was threatened by male inmates, presumably because he sought to end the nude viewing of inmates by the opposite gender. However, those threats were made in July and August and are not continuing. The danger of physical injury must amount to more than just fear that a physical attack could occur at some point in the future. Brown v. Johnson, 387 F.3d 1344, 1349-1350 (11th Cir. 2004) (plaintiff must present "specific fact allegations ... of a pattern of misconduct evidencing the likelihood of imminent serious physical injury").

Finally, Plaintiff has filed a Motion to Amend, but there is nothing alleged in the Motion to Amend which would meet the "imminent danger of serious physical injury" exception to the application of the three-strikes rule on Plaintiff's Complaint.

Therefore, even if this Court were to direct the inmate account portion of Plaintiff's *in forma pauperis* application be completed, the filing of any application for *in forma pauperis* status would be moot as Plaintiff is not eligible to proceed *in forma pauperis* under the "three strikes" rule and his Complaint does not meet the exception to the rule.

**III.    CONCLUSION**

Accordingly, I recommend that Plaintiff's claims be dismissed without prejudice, his IFP application be denied, and any pending motions terminated. Plaintiff is not eligible to proceed IFP

because of the application of 28 U.S.C. § 1915 (g).  Should Plaintiff wish to proceed with this case, he should be advised to file with the Clerk of Court a motion to re-open and submit the statutory filing fee of $350.00.  Upon receipt of the Motion to re-open and full payment of the filing fee, the case will be reopened.

**The Plaintiff has fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b) (1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 7th day of December 2010.**

/s/ Erin L.  Setser
HON.   ERIN L.  SETSER
U.S.  MAGISTRATE JUDGE